UNITED STATES DISTRICT COURT
NORTHERN DISTRIC OF FLORIDA
TALLAHASSE DIVISION

OSCAR CASTANEDA LOPEZ,
Petitioner,

V.

Case N. 4:24-CV-337-MW-MJF

RICKY D. DIXON,
Respondent.

LEGAL MAIL PROVIDED TO
COLUMBIA CORRECTIONAL INSTITUTION
ON 8/28/25 (DATE) FOR MAILING
STAFF INITIAL OCL I/M INITIAL

## PETITIONER'S REPLY

Petitioner responds pro'se and pursvant to 28 U.S.C. § 2244(d)(2) and Federal Rule of Civil Procedure 6(d) and posits that this court should review the petition for writ of habeas corpus as it was properly filed within the time limitation.

Notwithstanding, this is a case of fundamental miscarriage of justice exception in which the constitutional errors of Amendments V, VI, XIV and Human Rights of (Article 2) are violated on the face of the record, as petitioner invoke his right to remain silent; asked for an attorney, and his identity was changed in the Indictment as abuse of legal process.

Therefore, this petition is subject to review because of a state-court procedural default that rendered the proceedings basically unfair, and petitioner states the following:

-1-

## PROCEDURAL HISTORY (RESTATED)

Petitioner was charged by Indictment filed September 1, 2016 in Okaloosa County Circuit Court Case No. 2016-CF-2136 with one count of first-degree premeditated murder with a deadly weapon. Following a jury trial conducted October 5, 2018, the jury returned a verdict of guilty as charged. Petitioner was sentenced on October 5, 2018 to life in prison without the possibility of parole. Thereupon, petitioner appealed his judgment and sentence in open court on October 5, 2018 before he was committed to the department of corrections.

## PETITIONER'S REPLY

In response to the opposing party allegation that the petitioner's second 3.850 motion was untimely and that it was not a properly filed motion under § 2244 (d)(2), and did not toll the Federal limitations period. Petitioner asserts that Since this is an issue of state law and the Federal Court is require to defer to the state court determination that the second 3.850 was untimely and did not toll the Federal time because it was filed (1) one day after the (2) two years period; Petitioner contest with Florida Rule of General Practice and Judicial Administration Rule 2.514(b) which added (5) five days after the period. Similar to the Federal Rule of Civil Procedure 6(d). However,

'2'

the (2) two years period begings to run when appellate proceedings have concluded and a Court issues a mandate as this appellate proceedings was concluded on February 27, 2024.

(Exhibit A.) Acknowlegment of new case.    Sept 27, 2022

(Exhibit B.) Per Curiam Affirmed    Jan. 30, 2024

(Exhibit C.) MANDATE    Feb. 27, 2024

Counting back from the Mandate of the second 3.850 proceedings (February 27, 2024). Petitioner had 226 days left in the limitation period (365 - 139 = 226) or until October 13, 2024 to file his Federal Habeas Corpus Petition and the petitioner filed his petition in July 17, 2024 before the October 13, 2024 deadline. Therefore, petitioner habeas corpus was propedy filed pursuant to 28 U.S.C. § 2244(d)(2).

Wherefore Petitioner respectfully request that this Honorable Court review the Federal habeas petition as timely filed.

3

## FUNDAMENTAL MISCARRIAGE OF JUSTICE EXCEPTION

This case is in violation of the United States Constitution (Amendments **V, VI** and **XIV**) and in violation of the Universal Declaration of Human Rights ( Article **2.**).

Petitioner was arrested **on August 8, 2016** in the jurisdiction of Walton County, Florida under the probable cause statement that the Okaloosa County Sheriff Office was investigating a felony crime involving the Petitioner and they also stated that Petitioner Florida driver's license was cancelled because he is not a **U.S.** Citizen. **This was an excuse** to make the arrest in the jurisdiction of Walton County. (See Exhibit **D**).

Thereupon petitioner was interviewee by Okaloosa County Investigator Richard Cooper and Federal Agent **FBI** Tori Harker in which **petitioner invoke his right to remain silent** (Amendment V) and **his right for an attorney** (Amendment VI) but they refuse to stop the interview. (See Exhibit **E**),

Throughout the course of this proceedings on the same date of August 8, 2016, the Law Enforcement collected petitioner's **Passport, New Mexico Driver's License and I.D. Card** in the search and Seizure; which is clear evidence that the petitioner was in possession of a driver's license from the State of New Mexico at the time of the arrest, which the probable cause of a cancelled Florida driver's license was only an excuse to make the arrest. (See Exhibit **F**).

-4-

Because booking results in record of some of the circumstances of the arrest, the question has arisen in the legality of the arrest.

Petitioner was arrested again **on August 10, 2016** for the criminal offense of felony first degree pre-meditated homicide under the arrest report # 2016-00077327. (See Exhibit G).

Petitioner signed his invocation of constitutional rights **on August 11, 2016** with the assistance of public defender **Thomas Murphy**.

**On September 1, 2016**, petitioner was charged by Indictment in Okaloosa County Circuit Court Case # 2016-CF-2136 with one count of first-degree premeditated **murder** with a deadly weapon. Appears that this Indictment is the first filed in the docket information and **with** the erroneous identity on petitioner's date of birth "(**NOT A CLERICAL ERROR**)". Because An Indictment is a formal written accusation that requires to be by a formal legal process "(**due process of law**)". (See Exhibit H).

Notwithstanding the condition listed above, the petitioner original arrest and probable cause is a proof of the true and correct identity in which the law enforcement collected the petitioner's passport, driver's license from the state of New Mexico, I.D. Card and all kinds of other information to corroborate

the petitioner's correct identification.
Nevertheless the petitioner legal status
in the United states is a constituent element
to identify the petitioner under the jurisdiction
of the Department of Homeland Security. (ICE).
This indictment make an impact on the outcome
of the judgment because the jury found the petitioner
**GUILTY AS CHARGED**, as the jury must only
follow the structure and wording in the form
that the court authorizes for a verdict.

## ABUSE OF LEGAL PROCESS

**On October 10, 2016**, the judicial
system allowed the state Attorney to
**recall the warrant in this New Case.**
as It was at that time that the true and corret
identity of the petitioner was changed in
an abuse of legal process.

**On October 17, 2016**, Petitioner invocation
of Constitutional rights was placed into
the **New Case File**. This is not the
original document that the petitioner
signed on **August 11, 2016** as it looks
like someone **Forgery** this documents,
because petitioner's date of birth appears
on the original document which petitioner
signed in the presence of public defender
Thomas Murphy. (See Exhibit **I**)

`6`

Wherefore, Premises Considered; Petitioner respectfully requests that this Honorable court review the Federal habeas petition as timely and as a fundamental miscarriage of justice exception.

Respectfully submitted,

/s/

Pro'se   Oscar Castaneda Lopez
         Date Of Birth  02/02/1980
         DC# P54367

         Columbia Correctional Inst. Annex
         216 SE Corrections way
         Lake City, FL. 32025

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, under penalties of perjury, that on this 28 day of August 2025 I had delivered the forgoing Petitioner's Reply to an institutional official at the Columbia Correctional Institution for mailing via U.S. Post office, First class mail, postage prepaid, to the following recipients:

Original to:

United States District Court
1 N. Palafox street
Pensacola, FL 32502

Copy to:

Office of the Attorney General at.
PL-01 the Capitol
Tallahassee FL. 32399-1050

/s/
Oscar Castaneda Lopez
DC# P54367
Columbia Correctional Inst. Annex
216 S.E. Corrections Way
Lake City, FL. 32025.

-8-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSE DIVISION

Case No. 4:24-cv-337-MW-MJF

OSCAR CASTANEDA LOPEZ,
    Petitioner,

V.

RICKY D. DIXON,
    Respondent.

## EXHIBITS

A. Acknowledgment of New Case (Case No. 1D22-3024)
B. First DCA Per Curiam Affirmance (1D22-3024)
C. First DCA Mandate            (1D22-3024)
D. Original arrest report and probable cause
E. Interview
F. FDLE Item #43-E26 (Passport). Item #55-I3 (New Mexico DL)
G. Arrest Report #2016-0077327 (Violation Report)
H. Indictment
I. Invocation of Constitutional Rights.

FILED USDC FLND PN JFJ
SEP 2 '25 AM 11:49

# EXHIBIT
# A



DISTRICT COURT OF APPEAL
FIRST DISTRICT
STATE OF FLORIDA
2000 DRAYTON DRIVE
TALLAHASSEE, FLORIDA 32399-0950
(850) 488-6151
WWW.1DCA.ORG

KRISTINA SAMUELS
CLERK OF COURT

DANA SHARMAN
CHIEF DEPUTY CLERK

September 27, 2022

## Acknowledgment of New Case

RE:   Oscar Castaneda-Lopez v.
      State of Florida

**CASE NUMBER: 1D22-3024**
Lower Tribunal Case Number: 2016-CF-2136

The First District Court of Appeal has received the Notice of Appeal from the lower tribunal reflecting a filing date of September 7, 2022.

In the future, all documents filed in this case must contain this Court's case number.

Per Administrative Orders 10-1 and 19-1, Appellant must file a Docketing Statement/Notice of Appearance of Counsel ("Docketing Statement") within 20 days of the date of this acknowledgment notice. If pro se, Appellant may file a paper Docketing Statement by mail or an electronic Docketing Statement via the Florida Court's E-Filing Portal. If represented, Appellant's attorney must file the Docketing Statement via the Portal. A fillable form version of the Docketing Statement is available via a link on the "Documents" tab of the Portal or on this Court's website at https://www.1dca.org/Resources/General-Information. Opposing parties must file a Docketing Statement only if they seek to make amendments, corrections, or additions to Appellant's Docketing Statement.

cp

Served:   Hon. Ashley Moody, AG          Oscar Castaneda-Lopez
          Hon. J.D. Peacock II, Clerk

*Exhibit A.*

# EXHIBIT
# B

# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

---

No. 1D2022-3024

---

OSCAR CASTANEDA-LOPEZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

---

On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

January 30, 2024

PER CURIAM.

AFFIRMED.

BILBREY, WINOKUR, and TANENBAUM, JJ., concur.

---

***Not final until disposition of any timely and
authorized motion under Fla. R. App. P. 9.330 or
9.331.***

---

*Exhibit B.*

# EXHIBIT
# C

# M A N D A T E

### from

## FIRST DISTRICT COURT OF APPEAL

## STATE OF FLORIDA

This case having been brought to the Court, and after due consideration the Court having issued its opinion;

YOU ARE HEREBY COMMANDED that further proceedings, if required, be had in accordance with the opinion of this Court, and with the rules of procedure, and laws of the State of Florida.

WITNESS the Honorable Chief Judge Timothy D. Osterhaus, Chief Judge, of the District Court of Appeal of Florida, First District, and the seal of said Court at Tallahassee, Florida, on this day.

February 27, 2024

Oscar Castaneda-Lopez,
                    Appellant(s)

v.

State of Florida,
                    Appellee(s).

## DCA Case 1D2022-3024
L.T. No.: 2016-CF-2136

GL

Mandate and opinion to follow to: Hon. J. D. Peacock II
cc: (without opinion):
Oscar Castaneda-Lopez
Ashley Moody
Hon. J. D. Peacock II

*Exhibit C.*

# EXHIBIT
# D

BK# 1600003230
FCIC/NCIC CHECK  ☒YES  ☐NO

**ARREST REPORT / NOTICE TO APPEAR**

OBTS 6601053649

**WALTON COUNTY SHERIFF**

| REPORT TYPE | ☒ARREST |
| Adult | ☐ NOTICE TO APPEAR |

**ADMINISTRATIVE**

| ORI NUMBER | | | |
|---|---|---|---|
| FL0660000 | | | |

| CHARGE TYPES | ☒ FELONY | ☐ MISDEMEANOR | ☐ ORDINANCE |
| | ☐ TRAFFIC FELONY | ☒ TRAFFIC MISDEMEANOR | ☐ OTHER |

AGENCY REPORT NUMBER
**2016-00076109**

| LOCATION OF ARREST | LOCATION OF OFFENSE |
|---|---|
| 141 Mack Bayou LOOP SANTA ROSA BEACH | 141 MACK BAYOU LOOP 301 SANTA ROSA BEACH |

| DATE AND TIME OF ARREST | OFFENSE DATE AND TIME |
|---|---|
| 08/08/2016  07:45 | 08/08/2016  07:45 |

**DEFENDANT**

| JACKET TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | DOB | AGE | SEX |
|---|---|---|---|---|
| Adult | Castandea-Lopez, Oscar | 2/2/1980 | 36 | Male |

| RACE | HEIGHT | WEIGHT | HAIR COLOR | EYE COLOR | COMPLEXION | BUILD |
|---|---|---|---|---|---|---|
| Hispanic | 5'6 | | Black | Brown | Medium Brown | Athletic |

| LOCAL ADDRESS (STREET, CITY, STATE, ZIP) | PHONE | NTA THUMB PRINT |
|---|---|---|
| 151 Beacon WAY DEFUNIAK SPRINGS, FL 32459 | (850)419-9888 | |

| PERMANENT ADDRESS (STREET, CITY, STATE, ZIP) | PHONE |
|---|---|
| | |

| BUSINESS NAME AND ADDRESS (OR PARENT INFO IF JUVENILE) | OCCUPATION- Construction | PHONE |
|---|---|---|
| Painter / Huff Construction 151 Beacon  WAY SANTA ROSA BEACH, FL  32459 | | (850)419-9888 |

| SCARS, MARKS TATTOOS | INDICATION OF |
|---|---|
| | ALCOHOL INFLUENCE: No |
| | DRUG INFLUENCE: No |

| DL NUMBER/STATE | SOCIAL SECURITY | PLACE OF BIRTH | CITIZENSHIP |
|---|---|---|---|
| C235640800420/FL | 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 | Mexico | Mexican Citizen |

**CHARGES**

| CHARGE DESCRIPTION | WARRANT NUMBER | COUNTS | F.S / ORD | STATUTE/ORD VIOLATION CODE |
|---|---|---|---|---|
| No Driver License - Never Had One | | 1 | ☒F.S ☐ORD | 322.03.1 |
| VOP On Site | | 1 | ☒F.S ☐ORD | 948.06 |
| | | | ☐F.S ☐ORD | |
| | | | ☐F.S ☐ORD | |
| | | | ☐F.S ☐ORD | |
| | | | ☐F.S ☐ORD | |

**PROBABLE CAUSE STATEMENT**

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe the above named Defendant committed the following violation of law: On the 8 day of August, 2016 at 7:45 ☒A.M. ☐P.M. (Specifically include facts constituting cause for arrest.)

On Monday August 8, 2016, at about 7:45 AM, I, Sgt. Timothy J. Brooks, initiated a traffic stop on Mack Bayou Rd, Santa Rosa Beach, FL, Walton County, near the intersection of Mack Bayou Loop. I discovered defendant Oscar Castaneda-Lopez to be the driver and sole occupant. I initiated the traffic stop based on information given to me by Lt. M. Raiche of the Okaloosa County Sheriff's Office earlier in the morning as Raiche informed me Castaneda-Lopez had a cancelled Florida Driver's License. Prior to stopping the vehicle, a 2004 maroon Chevy Astro van (registered to the defendant), I also observed the van cross the fog line (white line twice).

The defendant, Oscar Castaneda, has established residency within the State of Florida for more than thirty (30) days. He is required by F.S.S. 322.031(1) to possess a Florida Driver's license to operate a motor vehicle in this state. He has also violated the terms of his felony probation in violation of F.S.S. 948.06. Facts to

| CONTINUED FOR: | ☐ NARRATIVE | ☐ CHARGES |
|---|---|---|

**NOTICE TO APPEAR**

| MANDATORY APPEARANCE IN COURT | LOCATION (COURT, ROOM NUMBER, ADDRESS) |
|---|---|
| | COURT DATE/TIME | MONTH | DAY | YEAR | TIME | ☐ A.M. ☐ P.M. |

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE DESCRIBED.
I UNDERSTAND THAT SHOULD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST OR A TAKE INTO CUSTODY ORDER SHALL BE ISSUED.

| SIGNATURE OF DEFENDANT/JUVENILE | SIGNATURE OF JUVENILE PARENT/CUSTODIAN |
|---|---|

**ADMINISTRATIVE**

I SWEAR/AFFIRM THE ABOVE AND ATTACHED STATEMENTS ARE TRUE AND CORRECT

| OFFICER'S/COMPLAINTANT'S SIGNATURE | |
|---|---|
| Brooks, Timothy J. | 08/08/2016 |

| ATTESTING OFFICER | |
|---|---|
| Pendleton, Paula M. | 08/08/2016 |

1 OF 2

*Exhibit D.*

WCSO Arrest Page 1 OF 2

| | ARREST REPORT / NOTICE TO APPEAR | REPORT TYPE | X | ☐ ARREST |
|---|---|---|---|---|

**WALTON COUNTY SHERIFF**

☐ NOTICE TO APPEAR

| CRI NUMBER | | | | AGENCY REPORT NUMBER |
|---|---|---|---|---|
| **FL0660000** | *Probable Cause Continuation* | | | **2016-00076109** |

| JACKET TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) |
|---|---|
| **Adult** | **Castandea-Lopez, Oscar** |

**PROBABLE CAUSE STATEMENT**

support the charges are as follows: the Okaloosa County Sheriff's Office is currently investigating a felony crime involving the defendant. During that investigation, they learned the defendant was operating a motor vehicle in violation of Florida criminal traffic laws and was in violation of his probation. Okaloosa County Sheriff's Office Lt. Mark Raiche and Investigators of the Okaloosa County Sheriff's Office and the Florida Department of Law Enforcement met with me on the morning of August 8, 2016. They provided facts to support the charges below. The facts contained in this affidavit were witnessed by sworn officers of the Okaloosa County Sheriff's Office, the Florida Department of Law Enforcement and the Walton County Sheriff's Office.

On 08/23/2002, the defendant's Florida driver's license was cancelled "non US Citizen Dup/Ren/Rep Denied". Since that time, he has listed several addresses within the State of Florida as his place of residence. He is currently on felony probation under supervision of the State of Florida effective 08/21/2014. He currently lists 151 Beacon Way in Santa Rosa Beach, Walton County, Florida, as his residential address. He has previously listed his residential street address as 315 19th Street in DeFuniak Springs, FL. On 3/3/2015 and again on 11/05/2015, DeFuniak Springs Police Department reports document him living there and using this address.

The defendant has listed his place of employment as Huff Construction in the past. He has posted photos of himself using commercial painting equipment and has engaged in the construction trade since at least June of 2016. One of the photos was titled "work". Just prior to operating his vehicle on this date, he was observed loading a van whti what appeared to be commercial painting equipment. He was wearing paint stained clothing.

I observed the defendant operating and in actual physical control of a 2004 Chevrolet Astro van on Mack Bayou Rd. in Walton County Florida on August 8, 2016. The defendant committed a criminal traffic offense and has failed to remain at liberty without violating the law. This is a violation of his felony probation.

Based on these facts, I have probable cause to believe the defendant, Oscar Castaneda-Lopez is a resident of the State of Florida. He has resided within the state and engaged in construction / painting work within the State of Florida for more than 30 days. He has failed to obtain a Florida driver's license before operating a motor vehicle upon the roadways of Walton County, Florida. This act violated F.S.S. 322.031(1). His violation of the terms of his probation violated F.S.S. 948.06 and occurred in my presence in Walton County Florida.

*Exhibit D.*

WCSO Arrest Page 2 OF 2

# EXHIBIT
# E

**33**

go back and forth.

MR. CASTANDEA: Looking for my phone, I don't know. Maybe when I was looking for my phone, I don't know, maybe two or three times.

INVESTIGATOR COOPER: Yeah.

INVESTIGATOR COOPER: The last time you jumped that fence, the last time, five minutes later you're inside his apartment and y'all are fighting. I don't know how much he was fighting, but from the look of it, obviously you got the best of him.

MR. CASTANDEA: No.

INVESTIGATOR COOPER: 'Cause there is blood --

MR. CASTANDEA: There's no way that I -- *444(3)*

INVESTIGATOR COOPER: Yes, there's a way. Own it, man.

MR. CASTANDEA: No. Physical fight, no. *(5)*

INVESTIGATOR COOPER: Yeah. There's no other explanation for it.

MR. CASTANDEA: Can't be in a physical fight *(7)* 'cause, no. I don't remember fighting with anybody. All I remenbar is --

INVESTIGATOR COOPER: You remember everything else, but you don't remember this. How is that possible?

MR. CASTANDEA: Not fighting. I don't

**34**

remember fighting.

INVESTIGATOR COOPER: Yeah, that's what I'm saying. You remember everything before and after, but you don't remember then?

MR. CASTANDEA: After 'cause I was sober. *(14)*

INVESTIGATOR COOPER: You know why you're probably -- why you're saying that, for one, you were in such a rage 'cause this man did you wrong.

MR. CASTANDEA: What's rage mean?

INVESTIGATOR COOPER: Rage means very mad, angry.

MR. CASTANDEA: No, not that mad. *Not T.T.*

INVESTIGATOR COOPER: This says it all right here. It goes on for days how you're gonna kill him.

INVESTIGATOR VICTORIA: Days and days. "I'll ask God for forgiveness after I do it. I'm gonna kill the stupid ass. I believe in God, but I want *Not T.T.* him dead also."

And then you're on video in a fight with him and then there's so much blood afterwards. You ask Anne Marie, "Can I kill him?"

MR. CASTANDEA: Could have been somebody else. *(21)*

INVESTIGATOR COOPER: No.

INVESTIGATOR VICTORIA: Oscar.

**35**

INVESTIGATOR COOPER: No. There's no way. That is your phone.

MR. CASTANDEA: That's my phone, yes. *444(23)*

INVESTIGATOR COOPER: It was found where this happened.

INVESTIGATOR VICTORIA: You didn't find it. *(25)* We did. And all of this builds explaining why you did what you did and there's a video with you going in and then there's a fight in the bedroom and then *445(1)* you come out and there's blood left but the body's gone. *Not T.T.*

INVESTIGATOR COOPER: You even change clothes in there. Probably put his clothes on because you had so much blood on you. *445(3-4)*

INVESTIGATOR VICTORIA: Oscar, just be honest. If you can't be honest -- (Unintelligible.) -- how this happened. If you're not honest, then we can't help you.

MR. CASTANDEA: Yeah. I'll explain to the court, but I don't see no fighting. *(8)*

INVESTIGATOR COOPER: Yeah. You want us to take somebody else's story because we've been talking to other people that we know that were there, okay?

MR. CASTANDEA: Yeah, I know I was there. *(13)*

**36**

INVESTIGATOR COOPER: 'Cause you even look out the window a couple times. *(14-15) finger prints*

MR. CASTANDEA: I don't --

INVESTIGATOR COOPER: You remember looking out the window? *Prints*

MR. CASTANDEA: No. *445(17-18)*

INVESTIGATOR COOPER: Grey SUV comes by. Somebody comes up to the door, you look out again, and then they walk away from the door.

MR. CASTANDEA: I don't remember that part. What you say that I have the right for what, to stop silent? I already told you my story. I didn't fight with him. *445(22-24)* *Lawyer ?1 Silent?*

INVESTIGATOR COOPER: You fight with him.

MR. CASTANDEA: Could be someone else. *446(1)*

INVESTIGATOR COOPER: There's no way. I've been -- not only have I, but we've had probably four other people go through that video just to make sure we weren't missing anything. You're the only one that goes in, you're the only one that comes out.

INVESTIGATOR VICTORIA: Your wife says, "I don't care what you do to him. Just be careful."

INVESTIGATOR COOPER: You don't want to own -- You don't want to show your pride to all this, your

*Exhibit E*

**37**

family, what he did to your family? We know you were hurting. I know you were hurting. Trust me, I have an ex-wife too, okay? I went through the same thing. I didn't have kids at the time though, okay, so it was a little bit easier to deal with. But I was mad, I was angry. And probably the best thing for me was I was 1,200 miles away, so there was nothing I could do. So that's why I -- When I say I understand your rage and your anger, been there. I've been there. It's not me saying, oh, I think I know how you would feel. Yeah, I could see you feeling that way. No, I've been there.

But you know what, you got a family, you got kids, and this man was trying to take that away from you. He was buying your wife gifts and driving her around in his Mercedes. Me, like I said, I was far away from my ex-wife when it happened, so I didn't have to put up with all that. You had to live it day in and day out, okay. That would make me so angry that that would probably happen and that's what happened. You followed through on everything you told your wife and she told you, okay? *NOT T.T.*

MR. CASTANDEA: I only remember I was drunk that night, but, no, I don't fight with him. *447(1-2)*

**38**

INVESTIGATOR COOPER: But you went in the apartment. You went in the apartment three or four times.

MR. CASTANDEA: Yeah. Because I know where he live. We used to play golf a lot. *NOT T.T.*

INVESTIGATOR COOPER: Yeah. No. What I'm saying is that night you kept going in and out of the apartment through the back door, okay. You jump the fence, go in the back door, come back, then you went to the guy that gave you a ride 'cause you didn't know where your phone was at. Come back about, I don't know, 15-20 minutes later I guess.

MR. CASTANDEA: 'Cause the guy that give me a ride lives over there too. *NOT T.T.* *12*

INVESTIGATOR COOPER: Yeah, you went to his house. He didn't go over there. I know that for a fact. He didn't go over there, but you went over to his apartment.

You didn't even knock on the door, or maybe you knocked but then you just went in. Maybe that's, I don't know, the way you guys are, I don't know. When I say that, the culture, you know, it's accepted. I'd be afraid to just because of *NOT T.T.* everything that goes on nowadays.

**39**

But you come back from over there, then you go over the fence, come back, go over the fence, and that last time that you end up going back through the back door the fight's on. I know too much. I can't make this up, Oscar.

MR. CASTANDEA: No. No, you can't make it up.

INVESTIGATOR COOPER: I can't make it up.

MR. CASTANDEA: Yeah. But something like the blood and that, I don't know. *448 (3)*

INVESTIGATOR COOPER: I cannot make that up. There's no way I can make that up.

MR. CASTANDEA: Well, I can't say it's blood because I don't see no blood. *(6)*

INVESTIGATOR COOPER: I don't know how you missed it. You walked all in it. You were all in that blood. You even changed clothes. Why did you change clothes in there?

MR. CASTANDEA: Maybe it's 'cause I was drinking. *(11) See FDLE REPORT.*

INVESTIGATOR COOPER: So you changed clothes in his apartment.

MR. CASTANDEA: That I don't remember if I changed clothes.

INVESTIGATOR COOPER: Yeah, you did. 'Cause when you came out the last time, you weren't

**40**

wearing the same clothes again. Where are those clothes at?

MR. CASTANDEA: They should be in my house. *(20) FDLE*

INVESTIGATOR COOPER: The clothes you changed into?

MR. CASTANDEA: Yeah.

INVESTIGATOR COOPER: They should be at your house?

MR. CASTANDEA: They should be, yeah.

INVESTIGATOR COOPER: I mean, wouldn't you know what were yours and what clothes you borrowed?

MR. CASTANDEA: Yeah.

INVESTIGATOR COOPER: Okay.

MR. CASTANDEA: But that's my clothes, my clothes. *(25)*

INVESTIGATOR COOPER: Not the clothes you walked out of his apartment with. You were wearing light-colored clothes. When you came out, you weren't wearing light-colored clothes. *449(1-4)*

MR. CASTANDEA: So when I be able to speak with a lawyer? *"LAWYER" ?2*

INVESTIGATOR COOPER: Whenever you want. Is that what —

MR. CASTANDEA: Okay. I don't have one. *NOT T.T.*

INVESTIGATOR COOPER: Huh?

*Exhibit E.*

**41**

MR. CASTANDEA: I don't have one.

INVESTIGATOR COOPER: Okay. Is that what you're telling me.

MR. CASTANDEA: Uh-hum. *NOT T.T.*

INVESTIGATOR COOPER: Well, this is --

MR. CASTANDEA: Because you're telling me *449(5)* about blood and I don't -- I didn't see no blood. I don't remember any blood. *(6)*

INVESTIGATOR COOPER: Okay. Well, it was there, trust me. Our crime scene people are still there because there's so much.

MR. CASTANDEA: You can be tricking that he made it up. *449 (9)*

INVESTIGATOR COOPER: No, there's no tricking.

INVESTIGATOR VICTORIA: No.

INVESTIGATOR COOPER: There's no tricking.

*FDLE* MR. CASTANDEA: (Unintelligible.) -- and my backpack should be at my house. *(11) NOT T.T.*

INVESTIGATOR COOPER: Can I see the bottom of your shoes? *(12-13) NOT TT*

Okay. Do you want to talk to us anymore or no? *449 (12-13)*

INVESTIGATOR VICTORIA: This is your last time to talk to us?

MR. CASTANDEA: Yeah. Well, I was only

**42**

looking for my phone, that was all.

INVESTIGATOR COOPER: Okay. Well, you want to tell us your story or do you want a lawyer? *18*

MR. CASTANDEA: But that's what I already tell you, that's it. Only thing I know, looking for my phone. I didn't see no blood. *(19)* *NOT T.T*

INVESTIGATOR VICTORIA: I'm still kind of confused. When you first go there, you bang on the doors and he's not there, or you just see his car's not there so you assume he's not there?

MR. CASTANDEA: Yeah, that's how I know he wasn't there 'cause I knocked on the door and nobody opened and I don't see his car.

INVESTIGATOR VICTORIA: Okay. So then you --

MR. CASTANDEA: I see another vehicle. *450(1)*

INVESTIGATOR VICTORIA: Another vehicle. What kind? *NOT T.T. PORCHE WHITE*

MR. CASTANDEA: I don't remember. The truck that you, what you say, I was lifting something?

INVESTIGATOR COOPER: Uh-huh.

MR. CASTANDEA: I don't get nothing out of that truck. *(6) Monges truck.*

INVESTIGATOR COOPER: Okay.

INVESTIGATOR VICTORIA: Is that his? Is that his truck?

**43**

MR. CASTANDEA: Don't know.

INVESTIGATOR VICTORIA: Whose that truck?

MR. CASTANDEA: There was a truck parked over there. *(450) (9)*

INVESTIGATOR VICTORIA: Oh. In his parking spot you mean? *(10)*

MR. CASTANDEA: Yeah, 'cause it was in front of his house, yeah. *(11) NOT T.T.*

INVESTIGATOR VICTORIA: So when you arrived, his car's not there and a truck's parked in his spot. You knocked on the door, nobody answers, you fall asleep. You fall asleep on the sidewalk or the parking lot?

MR. CASTANDEA: It was in front of his door closed, I don't know. Yeah, but I fall asleep somewhere over there. *NOT T.T.*

INVESTIGATOR VICTORIA: Okay. So bang on the door, nobody answers, you fall asleep on the front. You wake up, you realize your phone's not there.

MR. CASTANDEA: Uh-huh.

INVESTIGATOR VICTORIA: Your phone is missing. Do you bang on the door again to see if he's back home now or no?

MR. CASTANDEA: I don't know.

INVESTIGATOR VICTORIA: Okay. At that point

**44**

your phone is missing and that's your focus and that's when you go jump the fence. And then you go inside, and you find him in there, right, 'cause you said that you saw him downstairs.

MR. CASTANDEA: That was three weeks ago. *451 (4)*

INVESTIGATOR VICTORIA: No. I mean that day.

MR. CASTANDEA: No. That day I don't saw him. *(6)*

INVESTIGATOR VICTORIA: You're saying you never saw him that day?

MR. CASTANDEA: Well, when he pushed me but he was -- yeah, he pushed me, he did, yeah. But my phone wasn't in his apartment. I don't know where my phone was. I have --

INVESTIGATOR VICTORIA: When did he push you? Was it that day or another time?

MR. CASTANDEA: Three weeks ago.

INVESTIGATOR VICTORIA: Okay. But that day, so you're saying he was never there?

MR. CASTANDEA: I don't remember seeing him. *(17)*

INVESTIGATOR VICTORIA: I thought you said you saw him downstairs that day.

MR. CASTANDEA: No. You say that -- you say that I jumped the fence how many times, three times? *(20-21)*

INVESTIGATOR COOPER: Three or four times.

*Exhibit E.*

**53**

those specific questions and she lied to you at first and then she told you. This is your phone, Oscar. 456 (22-23)

MR. CASTANDEA: I know that's my phone. (23)

INVESTIGATOR VICTORIA: That is your phone.

MR. CASTANDEA: Yeah. Not T.T.

INVESTIGATOR COOPER: Nobody else had it, okay. It was found there, okay. But she finally (25) tells you, "He's a liar. You need to kill him because he's a liar and he disrespected me," meaning her. She's saying nothing ever happened so that's disrespectful. Then days go by. You're still mad. You're still pissed off. You remember this, right?

MR. CASTANDEA: Uh-hum.

INVESTIGATOR COOPER: You do remember this?

MR. CASTANDEA: So you say that I can try -- How you apply to getting a lawyer so I can -- 'Cause me personally don't know how to say this 'cause you say blood and make me wonder. ? 3

INVESTIGATOR VICTORIA: You say kill. You say murder. 457 (2)

MR. CASTANDEA: Yeah. Whatever it is. That guy should be somewhere.

INVESTIGATOR COOPER: Oh, he's somewhere.

**54**

MR. CASTANDEA: Trying to trick me, whatever.

INVESTIGATOR VICTORIA: These are your texts, and we'll be sharing that with an attorney that you get also. This is our one chance to talk to you. You can stop the interview at any time you want, but this is our chance to talk to you and to get the story.

Common sense, if I was sitting on the jury and I read your phone and I saw the video and I listened to what you're telling us, as a juror I'm not gonna -- I'm not gonna believe you. This is your phone. This is your words, "I'm going to kill the stupid ass," the same night he died.

INVESTIGATOR COOPER: And he is stupid for doing that.

INVESTIGATOR VICTORIA: He has no business disrespecting you.

MR. CASTANDEA: Yeah. But there's no way 'cause there's no blood I don't think. 457(8-9)

INVESTIGATOR COOPER: Yeah. No.

INVESTIGATOR VICTORIA: The video shows you going in and the body's missing and there's too much blood for him to survive. The question --

MR. CASTANDEA: But that blood cannot be from me. Not T.T. 457 (13)

**55**

INVESTIGATOR COOPER: No, it's not yours.

MR. CASTANDEA: It's his.

INVESTIGATOR COOPER: It's his.

INVESTIGATOR VICTORIA: His stupid ass was killed that night, and that's exactly what you say you're going to do.

MR. CASTANDEA: But it doesn't mean I'm gonna do something. I can't do stuff like that.

INVESTIGATOR COOPER: You will ask forgiveness later. This has to be done is what you said. And my guess is you did go back and ask forgiveness.

INVESTIGATOR VICTORIA: But now it's time to be honest about it.

MR. CASTANDEA: No. No, there is no way. I don't have that kind of heart. 457 (19-20)

INVESTIGATOR COOPER: I don't think you have it now 'cause it's already been done. I don't think that's the type of person you are. I know you're a good person, okay, hard-working person. I see that. That's in there and your wife's just out spending money like crazy. I mean, I'd go nuts just over the spending money, okay? You're out there working, busting your ass every day probably Saturdays and Sundays too more than likely.

MR. CASTANDEA: I work all the time.

**56**

INVESTIGATOR COOPER: Yeah, you work all the time, okay. And I know going through those, you're a good person, okay. But sometimes some things -- we get hit with something in our lives, you know, something comes up that just makes us not the person we normally are, okay. And I think this is what happened.

INVESTIGATOR VICTORIA: Crime of passion, anger. Not T.T. 458 (10)

INVESTIGATOR COOPER: Mistake. You wouldn't normally do this, I know that, just going through all this and talking to people.

MR. CASTANDEA: I didn't do it. I didn't do anything. If anything, I was under the influence of alcohol, but I do remember looking for my phone the whole time. That was the only thing I remember, looking for my phone, desperate looking for my phone. (14-18)

INVESTIGATOR VICTORIA: Because it has all this in it, right?

MR. CASTANDEA: No. Because, you know, nowadays, you have a phone. You got to have a phone; other ways, somebody calls and I don't get the job. Not T.T.

INVESTIGATOR COOPER: Right.

57 (1)  
NJER

Exhibit E.

93

are in the area.  Fidel's phone's all over the place in the there.

INVESTIGATOR VICTORIA:  You haven't been honest.  You just need to be honest with us.

MR. CASTANDEA:  Yeah.  But I didn't kill -- I didn't kill anybody.

INVESTIGATOR COOPER:  Was he alive when you came back?

MR. CASTANDEA:  I didn't even see anybody.  When I went to get the phone, I don't remember anything about --

INVESTIGATOR COOPER:  Well, you took his shirt.

MR. CASTANDEA:  That's my shirt.

INVESTIGATOR COOPER:  The black shirt you wore or dark shirt that you walked out of there with is your shirt?

MR. CASTANDEA:  Yeah.

INVESTIGATOR COOPER:  How long have your shirts been over there?

MR. CASTANDEA:  My backpack has been there.

INVESTIGATOR COOPER:  Where's your backpack now?

MR. CASTANDEA:  Should be in my house.  Should be in my house.

94

INVESTIGATOR COOPER:  I don't remember seeing a backpack coming out.

MR. CASTANDEA:  Yeah, it's my backpack, my black backpack.

INVESTIGATOR COOPER:  You didn't take a backpack over there.

MR. CASTANDEA:  No.  When we go play golf --

INVESTIGATOR COOPER:  When was the last time y'all played golf together?

MR. CASTANDEA:  That was -- Let me think.  Last time we played golf was it last year?

INVESTIGATOR COOPER:  When?

MR. CASTANDEA:  It wasn't last year.  It was last year, Fort Walton.  Many times we played golf.

INVESTIGATOR COOPER:  Yeah, but when was the last time you guys were together? '

MR. CASTANDEA:  Maybe like two, three months ago, two months ago.

INVESTIGATOR COOPER:  Okay.  There's no way your backpack's still over there.  That didn't happen, not when you got this going on.  No way.  Did not happen, not like that.

Did you take any other clothes?  Did you put on any other clothes while you were there?  Try on any other clothes?

95

MR. CASTANDEA:  No.

INVESTIGATOR COOPER:  'Cause he hangs all his clothes up.

MR. CASTANDEA:  He does?

INVESTIGATOR COOPER:  Yeah.  You were there.

MR. CASTANDEA:  No, I didn't take no clothes.

INVESTIGATOR VICTORIA:  Oscar, you need to be honest.

MR. CASTANDEA:  I'm honest with you.

INVESTIGATOR VICTORIA:  No.

MR. CASTANDEA:  I won't kill anybody.

INVESTIGATOR VICTORIA:  You wouldn't normally.

MR. CASTANDEA:  If you give me the chance to make a phone call, you know, try to get a lawyer, that would be good.  *Lawyer*

INVESTIGATOR COOPER:  Okay.

INVESTIGATOR VICTORIA:  You're saying you want to stop answering questions, you want an attorney . -- (Unintelligible.)

MR. CASTANDEA:  Okay.

INVESTIGATOR COOPER:  Just hang still right there.  We're gonna find that body.

(Thereupon, the recorded statement was concluded.)

96

CERTIFICATE

I, Jillian Seidman, Court Reporter and Transcriptionist, do hereby certify that I was authorized to and did listen to and transcribe the foregoing recorded proceedings and that the transcript is a true record to the best of my professional ability.

Dated this 1st day of September, 2018.

_____

Jillian Seidman

Exhibit E.

# EXHIBIT
# F



**FDLE NUMBER:** 20160204331  Submissions: 1, 2, 3, 4, 5, 6, 7 and 8

| | | |
|---|---|---|
| 31 | E15 | Two swabs from staining on wall of hallway to master bedroom, room K, of Castaneda's residence (photo marker #15) |
| 32 | E16 | Fuchsia polo, size large, from master bathroom of Castaneda's residence (photo marker #16) |
| 33 | E17 | White Guess t-shirt, size large, from master bedroom, room K, of Castaneda's residence (photo marker #17) |
| 34 | E18 | White Guess t-shirt, size small, from master bedroom, room K, of Castaneda's residence (photo marker #18) |
| 35 | E19 | Black hose from washing machine in Castaneda's residence (photo marker #19) |
| 36 | E20 | Dryer hose and lint from drying machine in Castaneda's residence (photo marker #20) |
| 37 | E21 | Yellow wallet, black key, card, and two $1 bills from bathroom cabinet, room D, in Castaneda's residence (photo marker #22) |
| 38 | E21a | Four pieces of a yellow pill, one piece of a white pill, one pink baggie with a piece of white pill, and one empty plastic baggie all from yellow wallet (Exhibit E21) |
| 39 | E22 | Pair of Guess blue jeans, size 32, from master bathroom in Castaneda's residence (photo marker #23) |
| 40 | E23 | White Sperry shoes, size 9, from garage in Castaneda's residence (photo marker #24) |
| 41 | E24 | Reebok sneakers, size 8.5, from garage in Castaneda's residence (photo marker #25) |
| 42 | E25 | One white pill with markings M366 from purse in living room in Castaneda's residence (photo marker #27) |
| 43 | E26 | Assorted papers and two passports for Oscar Castaneda from dresser in master bedroom, room K, in Castaneda's residence (photo marker #28) |
| 44 | E27 | Digital versatile disc containing images depicting the residence of the subject, Castaneda |
| 45 | E28 | Digital versatile disc containing images depicting evidence at the laboratory |

## Submission 005

| FDLE Item# | Agency Exhibit# | Description |
|---|---|---|
| 46 | F1 | Sealed manila envelope said to contain buccal swabs from the subject, Oscar Castaneda, received from Florida Department of Law Enforcement Special Agent Dyana Chase |

## Submission 006

| FDLE Item# | Agency Exhibit# | Description |
|---|---|---|
| 47 | G1 | Black and red Adidas sneaker, size 9.5, said to be from Fidel Gonzalez's home received from Florida Department of Law Enforcement Special Agent Barry Hatton |
| 48 | G2 | Maroon American Eagle cargo shorts, size 34, white Gildan ribbed tank, size large, and white Hanes t-shirt, size large, with staining said to be from Fidel Gonzalez's home received from Florida Department of Law Enforcement Special Agent Barry Hatton |
| 49 | G3 | Black Hamilton Beach microwave seized from the construction site on Church Street received from Florida Department of Law Enforcement Special Agent Brannan Riley |
| 50 | G4 | Digital versatile disc containing images depicting the body recovery of Torres |
| 51 | G5 | Digital versatile disc containing images depicting evidence at the laboratory |

Exhibit F.




**FDLE NUMBER:** 20160204331  Submissions: 1, 2, 3, 4, 5, 6, 7 and 8



### Submission 007

| FDLE Item# | Agency Exhibit# | Description |
|---|---|---|
| 52 | H1 | Digital versatile disc containing images depicting Castaneda's trailer |

### Submission 008

| FDLE Item# | Agency Exhibit# | Description |
|---|---|---|
| 53 | I1 | Black Adidas shoe, size 9, said to be collected from traffic stop received from Florida Department of Law Enforcement Special Agent Mark Brown |
| 54 | I2 | Blue and purple D-ring belt, gold colored necklace with charm, two carabineers, and a brown wallet containing $17.18 USD, 90 Pesos, 50 Lempiras, receipts, notes, business cards, cards with Saints, and two debit cards for Adrian Gonzalez and Fidel Gonzalez all said to be collected from traffic stop received from Florida Department of Law Enforcement Special Agent Mark Brown |
| 55 | I3 | Empty manila envelope, white bandage, black Nike hat with hat clip, white Under Armour sunglasses, New Mexico Driver's License for Oscar Castaneda, Samsung cell phone bearing IMEI: 990007046052418, black phone case, traffic citation, and black wallet containing $356.01 USD, Mexico ID card for Oscar Castaneda, New Mexico Driver's License for Oscar Castaneda, receipts, business cards, cards with Saints and a penny glued to it, and a photo all said to be collected from traffic stop received from Florida Department of Law Enforcement Special Agent Mark Brown |
| 56 | I4 | Digital versatile disc containing digital images depicting evidence at the laboratory |

## DISPOSITION OF EVIDENCE:

### Submission 001

Exhibits A2 and A3 were assigned to the Biology Section for analysis.

No forensic analysis was requested on Exhibits A1, A4, and A6. These exhibits may be resubmitted to the laboratory if analysis should become necessary. These exhibits, along with Exhibit A5, will be transferred to the Investigative Vault.

### Submission 002

No forensic analysis was requested on Exhibit B1. This exhibit may be resubmitted to the laboratory if analysis should become necessary. This exhibit, along with Exhibit C1, will be transferred to the Investigative Vault.

### Submission 003

Exhibits D1 and D2 were assigned to the Biology Section for analysis.

Exhibits D3 and D4 were assigned to the Latent Print Section for analysis.

No forensic analysis was requested on Exhibits D5, D6, and D7. These exhibits may be resubmitted to the laboratory if analysis should become necessary. These exhibits, along with Exhibit D8, will be transferred to the Investigative Vault.

*Exhibit F.*

# EXHIBIT
# G

40164/Thomas

# STATE OF FLORIDA
# DEPARTMENT OF CORRECTIONS
## VIOLATION REPORT

☒ REPORT CONTAINS CONFIDENTIAL INFORMATION

Date: August 12, 2016                    ☐ MANDATORY RETAKING FROM: _____

To:   Honorable Kelvin C. Wells          From:   Isaac Thomas, CPSp
Name:   Oscar Lopez Castaneda            DC No: P54367       Circuit:  01-4
Case No:  14-CF-335                      UC No: _____
Scheduled Termination Date:   8/20/2017

## REQUESTING

☐ Violation of Probation        ☐ Warrant for Arrest          ☐ Violation of Probation        ☐ No further action
Hearing-Warrantless            (Violation of Probation)      Hearing without Warrant-
Arrest Conducted                                             (Notice to Appear)

## TYPE OF REPORT

☐ Non-Compliance with Conditions        ☒ Arrest/New Charge          ☐ Warrantless Arrest
☐ Delinquent Monetary Obligations Only

## LOCATION

☐ At Large
☒ In Custody
☐ On Bond              Current Address              WALTON COUNTY JAIL
☐ ROR                                              796 TRIPLE G ROAD
☐ Absconder                                        DeFuniak Springs, FL 32433

(1) **HOW VIOLATION OCCURRED:**
Violation of Condition (5) of the Order of Probation, by failing to live and remain at liberty without violating any law by committing the criminal offense of No Driver License - Never Had One on August 8, 2016, in Walton County, FL, and as grounds for belief that the offender violated his probation, Officer Isaac Thomas states that the offender was arrested on August 8, 2016, for the said offense by Walton County Sheriff's Office, as told to Officer Isaac Thomas by Arrest Report #2016-00076109.

Violation of Condition (5) of the Order of Probation, by failing to live and remain at liberty without violating any law by committing the criminal offense of Felony First Degree Pre-Meditated Homicide, in Okaloosa County, Florida, and as grounds for belief that the offender violated his probation, Officer Isaac Thomas states that the offender was arrested on August 10, 2016, for the said offense by Walton County Sheriff's Office, as told to Officer Isaac Thomas by Arrest Report #2016-00077327.

(2)     **OFFENDER'S STATEMENT:** Offender not available for statement.

(3)     **HISTORY OF SUPERVISION:** ☒ ADJUDICATION WITHHELD  ☐ ADJUDICATED
Original sentence: Offender was before the courts on August 21, 2014 for the offense of Child Neglect Without Causing Great Bodily Harm and Battery. Offender was placed on three (3) years probation on Count 1 and Twelve (12) months on Count 2, both counts concurrent.

DC3-202 (Revised 1/7/15)                      Page 1                      2 Part File-Left Side
                                                                          6 Part File-Section 1

Exhibit G.

40164/Thomas

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Docket #: 14-CF-335

DC #: P54367

**AFFIDAVIT**
**VIOLATION OF PROBATION**

Before me this day personally appeared <u>Isaac Thomas,</u> who, being first duly sworn says that **Oscar Lopez Castaneda**, hereinafter referred to as the offender, was on the **21st** day of **August**, A.D., **2014** placed on **probation** for the offense of **Ct. 1 - Child Neglect And Ct. 2 - Battery** in the <u>Circuit</u> Court of <u>Walton</u> County, for a term of **Ct. 1 - three (3) years and Ct. 2 - twelve (12) months** in accordance with the provisions of Chapter 948, Florida Statutes.

Affiant states that the offender was instructed on the conditions of probation on **August 21, 2014 & October 2, 2014** by Officer **Ronald Wilson**.

Affiant further states that the offender has not properly conducted himself, but has violated the conditions of <u>his</u> <u>probation</u> in a material respect by:

Violation of Condition (5) of the Order of Probation, by failing to live and remain at liberty without violating any law by committing the criminal offense of No Driver License - Never Had One on August 8, 2016, in Walton County, FL, and as grounds for belief that the offender violated his probation, Officer Isaac Thomas states that the offender was arrested on August 8, 2016, for the said offense by Walton County Sheriff's Office, as told to Officer Isaac Thomas by Arrest Report #2016-00076109.

Violation of Condition (5) of the Order of Probation, by failing to live and remain at liberty without violating any law by committing the criminal offense of Felony First Degree Pre-Meditated Homicide, in Okaloosa County, Florida, and as grounds for belief that the offender violated his probation, Officer Isaac Thomas states that the offender was arrested on August 10, 2016, for the said offense by Walton County Sheriff's Office, as told to Officer Isaac Thomas by Arrest Report #2016-00077327.

_____
Isaac Thomas
Officer

**THIS AFFIDAVIT MUST BE NOTARIZED OR ATTESTED TO UNDER S.117.10 OR 92.50, FLA. STAT.**

Sworn to and subscribed before me this 12th day of August, A.D. 2016 by Isaac Thomas, who is personally known to me.

Notary Public _____

LINDA L. ADAMS
MY COMMISSION # FF 202088
EXPIRES: April 18, 2019
Bonded Thru Budget Notary Services

State of Florida at Large for <u>Walton</u> County

Approved by Supervisor: _____     Date: 8/12/16
Linda L. Adams, Correctional Probation Supervisor

(850) 951-1385/thomas.isaac@mail.dc.state.fl.us
Officer Telephone/E-Mail Address

DC3-216 (Revised 4/24/15)

Distribution:     Original:     Court
                  Copy:        Left Side-Offender File

FILED
WALTON CO FLORIDA
CLERK OF COURTS
2016 AUG 17 A 8: 1

Exhibit B.

# EXHIBIT
# H

OSCAR CASTANEDA-LOPEZ vs. STATE OF FLORIDA
LT. CASE NO: 2016 CF 002136 F          HT. CASE NO: 1D18-4717

No. 2016 CF 002136 F

## CIRCUIT COURT OF OKALOOSA COUNTY

## STATE OF FLORIDA

### THE STATE OF FLORIDA

### V.

### OSCAR CASTANEDA-LOPEZ
H/M
09/21/1980

# INDICTMENT FOR

1)   FIRST DEGREE PREMEDITATED MURDER WITH A DEADLY WEAPON

**A TRUE BILL**

_____
FOREMAN

Presented in Open Court by the Grand Jury, and filed in the presence of
the Grand Jury, this the ___1st___ day of ___September___ ,2016.

_Vanessa Parris_
Clerk

WILLIAM EDDINS
STATE ATTORNEY

CERTIFIED A TRUE
AND CORRECT COPY
JD PEACOCK II
CLERK CIRCUIT COURT
BY _Christine Mayer_
DEPUTY CLERK
DATE _10-1-18_



475

Exhibit H.

# EXHIBIT

# I

OSCAR CASTANEDA-LOPEZ vs. STATE OF FLORIDA
LT. CASE NO: 2016 CF 002136 F          HT. CASE NO: 1D18-4717

Filing # 47726003 E-Filed 10/17/2016 05:51:50 PM

IN THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY,
FLORIDA

STATE OF FLORIDA,
    Plaintiff

-vs-
    OSCAR CASTANEDA - LOPEZ
    Defendant
    _____/

CLERK NO: ||||||||||||||||||||||||||||||||||||||
CLERK NO: 16CF2136
DIVISION:  FEL

## DEFENDANT'S INVOCATION OF CONSTITUTIONAL RIGHTS

I, the undersigned, _____OSCAR CASTANEDA - LOPEZ_____, do hereby invoke my **RIGHT TO REMAIN SILENT** under the 5th Amendment to the United States Constitution and Article I, Section 9 of the Florida Constitution.

Furthermore, I do hereby invoke my **RIGHT TO COUNSEL**, guaranteed by Article I, Section 16 of the Florida Constitution; Rule 3.130, Florida Rule of Criminal Procedure; and the 5th and 6th Amendments to the United States Constitution, as interpreted by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966); Edwards v. Arizona, 451 U.S. 477, 68 L.Ed.2d 378, 101 S.Ct. 1880 (1981); and McNeil v. Wisconsin, 501 U.S. 171, 115 L.Ed.2d, 111 S.Ct. 2204 (1991); and the Florida Supreme Court in Trayler v. State, 596 So.2d 957 (1992).

By invocation of my foregoing **RIGHT TO COUNSEL**, I intend this to be an absolute expression of my desire for the assistance of an attorney in dealing with any custodial interrogation by the police about this arrest or any other crime or criminal activity under investigation.

Therefore, I demand that no local, State or Federal police or prosecution personnel (including jail inmates acting at the request or direction of such personnel) attempt to engage me in any conversation whatsoever, concerning any crime or criminal activity, without first providing me an attorney and having that attorney present.

54

Exhibit I.

OSCAR CASTANEDA-LOPEZ vs. STATE OF FLORIDA
LT. CASE NO: 2016 CF 002136 F        HT. CASE NO: 1D18-4717

Persons connected with law enforcement who allow a violation of these rights to occur shall be viewed as interfering with my attorney/client relationship as protected by the Florida and United States Constitutions and by the Rules of Professional Conduct for attorneys.

This **INVOCATION OF CONSTITUTIONAL RIGHTS** shall not be deemed to have been waived by me unless an attorney has been provided to me, either retained or appointed, and I execute a written waiver of these rights, signed by myself and my attorney.  Anyone violating this **INVOCATION OF CONSTITUTIONAL RIGHTS** will be subject to legal action for sanctions and/or damages.

I further demand that the original of this **INVOCATION OF CONSTITUTIONAL RIGHTS** be filed in the Court having jurisdiction in this cause and that my attorney serve a copy to the State Attorney and to the Sheriff's Office for placement in my jail file so that anyone wishing to question me will be on notice that I invoke my rights.

Furthermore, **I do not**:

1. Consent to speak with any jail psychologist or anyone in the ministry employed by the jail concerning the charges against me or any matter related thereto.
2. Consent to appear in any line-up, show-up, or other identification procedure without the opportunity to confer with my attorney.
3. Consent to interviews in any form with members of the media without the presence of my attorney.
4. Consent to the taking of any polygraph or voice stress examination, any voice sample, handwriting sample, handwriting exemplar, hair, blood, urine, saliva, skin sample or fingernail scraping.
5. Consent to the search of my residence, automobile, person or any other of my property, including my personal property being kept in the county jail.

Page 2 of 3,    8/11/2016,    DEFENDANT'S INVOCATION OF CONSTITUTION RIGHTS,    6615CF000641A

Exhibit I.

OSCAR CASTANEDA-LOPEZ vs. STATE OF FLORIDA
LT. CASE NO: 2016 CF 002136 F          HT. CASE NO: 1D18-4717

Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was furnished to the Office of the State Attorney, Okaloosa County, Florida, on October 17 2016.

BRUCE A MILLER
PUBLIC DEFENDER

**THOMAS S MURPHY**
**ASSISTANT PUBLIC DEFENDER**
FL BAR NO: 648302
732 BALDWIN AVENUE
DEFUNIAK SPRINGS, FL 32435
(850) 892-8090 EXT. 24
THOMAS_MURPHY@PD1.FL.GOV

Page 3 of 3,   8/11/2016,   DEFENDANT'S INVOCATION OF CONSITUTION RIGHTS,   6615CF000641A

56

Exhibit I.

Oscar Castaneda Lopez DC#P54367
Columbia Correctional Institution(Annex)

216 Corrections Way
Lake City, Florida 32025.

United States District Court
1 N. Palafox Street
Pensacola, Florida 3250-

LEGAL MAIL PROVIDED TO
COLUMBIA CORRECTIONAL INSTITUTION
ON 8/28/05 (DATE) FOR MAILING

STAFF INITIAL _____ OCL _____ I/M INITIAL